[Civ. No. 17737.   Second Dist., Div. Three.   Jan. 26, 1951.]

AARON SAPIRO, Appellant, v. ELVIRA T. MARQUIS, Respondent.

L. M. Cahill for Appellant.

Nathan Kline for Respondent.

SHINN, P. J.—Plaintiff Aaron Sapiro appeals from a judgment for defendant Elvira T. Marquis, in an action to recover attorney's fees. The court, sitting without a jury, decreed that plaintiff take nothing.

The trial court found that defendant had retained plaintiff for advice, consultation and the filing of any action deemed advisable against Leonard J. Marquis, whose wife she claimed to be and that these services were rendered to defendant by plaintiff at defendant's request. The court found further that plaintiff agreed to "obtain such compensation, if any, from LEONARD J. MARQUIS, . . . by negotiations with counsel for said LEONARD J. MARQUIS, or by application to the court in which said case was filed for such compensation . . ." and that defendant had not agreed to compensate plaintiff for his services. It was also found that "it is not true that said services were worth the sum of Seven Thousand Five Hundred Dollars ($7,500) *or any sum at all.*" (Emphasis added.) Although we are of the opinion that the evidence does not support the emphasized portion of the above quoted finding the decisive question is whether there was substantial evidence to support the finding that plaintiff agreed to look to defendant's alleged husband for payment.

Defendant and Leonard J. Marquis were married in Juarez, Mexico, in 1936, the day after Mr. Marquis had obtained a divorce there from Mrs. Blanche Marquis. Defendant and Mr. Marquis then returned to New York where, in 1937, Mrs. Blanche Marquis brought an action for separate maintenance against Mr. Marquis in which she received an award of money. It was adjudicated that the Mexican divorce obtained by Mr. Marquis was null and void, and the marriage between defendants (Marquis and defendant here, Elvira T. Marquis) was of no force and effect. It was also adjudged that plaintiff Blanche was the "lawful wife of the defendant Leonard J. Marquis." Marquis and defendant then moved to California, returning to New York in 1941 at which time Mrs. Blanche Marquis brought an action seeking to enjoin defendant from using the name "Marquis" and Mr. Marquis from giving her money, gifts, etc. Injunctive relief was denied (*Marquis* v. *Marquis,* 178 Misc. 702 [35 N.Y.S.2d 675]) on the ground that plaintiff had shown no wrong done or threatened and no legal right to be protected. Defendant and Mr. Marquis returned to California where they resided as husband and wife. In 1948, defendant sought legal advice from plaintiff concerning a divorce from Mr. Marquis and her rights in community property alleged to amount to some $865,000. As a result of numerous conferences, telephone conversations and letters, an annulment suit was filed against Marquis by defendant herein. Mr. Marquis obtained counsel,

and attorneys for both parties conferred on several occasions in order to work out a property settlement agreement which would meet with the approval of their clients. In the annulment action defendant here prayed for attorney's fees in the sum of $25,000 and during the negotiations for a settlement, apparently attorney's fees were contemplated as a part thereof. On September 29, 1948, plaintiff, due to press of other business, deemed it advisable to associate other counsel in the Marquis matter, and took Mrs. Marquis to the office of S. S. Hahn and others for that purpose. A substitution of attorneys bears this date, substituting Aaron Sapiro and Hahn, Ross, Goldstone and Saunders for Aaron Sapiro. Mr. Hahn was the controlling figure in the settlement negotiations, and the evidence shows that he informed Mr. Sapiro of the progress being made. In October, 1948, a dispute arose between plaintiff Sapiro and Mr. Hahn concerning the case and whether or not it should be dismissed because of threatened intervention therein by Mrs. Blanche Marquis. Plaintiff contends here that he was dismissed as an attorney in the case, which Hahn and defendant deny. They insist that he remained as one of defendant's attorneys in the case and entitled to receive his share of any amount received as attorneys' fees from Mr. Marquis under any settlement agreement reached by the parties. On November 5, 1948, the annulment action was dismissed without prejudice. On January 13, 1949, plaintiff rendered a statement in the sum of $7,500 to defendant for legal services.

On August 28, 1948, plaintiff wrote to defendant as follows:

"It is customary in annulment matters for a retainer to be received by the attorney.

"In these cases the court may have discretion in granting fees; but occasionally this is denied by the judge, either because of the nature of the annulment or because of the details of the case.

"In the last case that came before the courts on this matter, the court denied fees to the lawyer; and the Appellate Court held that this was wholly within the discretion of the judge.

"Therefore, it has become customary in these matters to receive a retained.

"On this account, I suggest that you arrange to send in to this office a retainer of $3,000.00.

"Will you take care of this at your early convenience?"

Defendant paid nothing but on September 13, 1948, wrote to plaintiff, in part, as follows:

"Dear Aaron—

"I am loathe to trouble you while you are engaged in an important trial with my little case. But I am so very miserable and confused, I just have to get some of it off my chest.

"Aaron, I am sorry that we started this case of mine at a time when it was necessary for you to leave town for so long. You, as a man of singular mental strength may not be able to realize how great the emotional and psychological strain of my present living condition is. It is very difficult to bear up under it.

"Besides this, Lenny's lawyers have assured him with all positiveness that we—meaning you and me—have not a leg to stand on with our case, and that he will not have to give me a penny.—I wonder if you can imagine how I felt when I learned of this? Especially as you have never given me the least bit of assurance (wisely so, I believe) upon which I could lean now for some comfort and courage, that the outcome of the case will be favorable for me.

"*And then, of course, I am terribly worried (and blame myself no end for not having discussed your fee matters clearly before hand) about the financial end of it all in the event we are fighting a losing battle. Please do not misunderstand me dear Aaron, I am more than willing to recompense you for your services of course, and know that no one would give me a fairer deal than you, but I am just so upset about all this uncertainty, and not having you here now to discuss matters with is quite difficult.*" (Emphasis added.)

On the other hand, the record shows that Mr. Hahn testified that at the conference where he, plaintiff and defendant first discussed fees and the money sued for, the following conversation took place: "She [defendant] wanted to know whether, if I [Hahn] have to be paid to be a lawyer, something to that effect. And I replied, 'No, Mr. Sapiro and I are taking this case on the basis of fifty per cent, whatever we recover from your husband, and you are not to pay anything,' and I told her that is just the way I handle cases in the office, most cases for the wife, and I told Mr. Sapiro, and I said, 'That is a fact, is it not, we have agreed on that; that is the arrangement you have with me?' and he said, 'Yes.'" Apparently defendant then said "Well, all right,

if I have to pay nobody, then go ahead." At the time of the dispute over the way the case was being handled, plaintiff said he was going to ask "right now for $2500 for the work I did, and I am getting out of the case," but apparently calmed down thereafter. There was evidence that Hahn discussed the progress of the case with plaintiff subsequent to that time, that neither Hahn nor defendant considered that the latter was no longer associated. Plaintiff himself testified that he was never formally discharged, either orally or in writing.

We are of the opinion that there was ample evidence to sustain the finding in question. While plaintiff may, at the time he requested the retainer fee, have looked to defendant for payment, there was evidence that she did not accede to his request, and that he later agreed, with Hahn, to look solely to Mr. Marquis for payment.

Although plaintiff's employment and the rendition of services implied an obligation to pay for the same there was evidence opposed to that implication. Defendant testified that she had no agreement with plaintiff to pay fees even if the efforts to collect them from Mr. Marquis failed. Plaintiff testified in substance that he believed defendant told him that he could look to her for fees in that event. However, in a questionnaire filed upon the application for temporary support, attorney's fees and costs, defendant gave her worth at $27,000 and her personal income at less than $100 per month. She gave her husband's worth at $750,000 and his income at from $5,000 to $10,000 per month. In answer to a question in the questionnaire "Have you personally arranged to pay your attorney's fees in this case," defendant answered "No." This questionnaire was a representation to the court that no arrangement whatever had been made under which plaintiff was to render services in the case upon the credit of Mrs. Marquis. The trial court in the present action could have inferred that it was the understanding of the parties that plaintiff's services were to be rendered for whatever compensation the court might order Mr. Marquis to pay.

Moreover, if, despite the statement in the affidavit that Mrs. Marquis had not obligated herself personally to pay fees, it should be believed in accordance with plaintiff's testimony that she had agreed to pay if nothing should be collected from Mr. Marquis, it appears without dispute that her efforts to obtain a settlement, including fees for her attorneys have not been abandoned. So far as shown by the record money may yet be obtained from Mr. Marquis as and for attorneys'

fees for defendant's attorneys, including plaintiff herein. The court was justified in holding upon the evidence before it that defendant is not indebted to plaintiff for attorney's fees.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.